**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN E. RAHL,** individually and as 95% stockholder of the Wallkill Valley Railroad Company (1866) d/b/a Wallkill Valley Railroad Company,

                     **Plaintiff,**                1:09-cv-01165
                                                                    (GLS\DRH)

                         **v.**

**NEW YORK TELEPHONE COMPANY,** d/b/a **VERIZON,** d/b/a **BELL ATLANTIC TELEPHONE COMPANIES,** d/b/a **NYNEX,**

                     **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
John E. Rahl
Pro Se
6 Fairview Avenue
P.O. Box 460
Rosendale, NY 12472

**FOR THE DEFENDANT:**
Phillips, Lytle Law Firm           MARC H. GOLDBERG, ESQ.
Omni Plaza
30 South Pearl Street
Albany, NY 12207

**Gary L. Sharpe
District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Plaintiff John Rahl brings this action against Verizon under 28 U.S.C. §§ 1331, 1337(a), and FED. R. CIV. P. 65, alleging breach of contract, trespass, and violations of property rights protected by various provisions of the United States Constitution, New York State Constitution, and New York Railroad Law. (*See* Compl., Dkt. No. 1.) Pending are Verizon's motion to dismiss for lack of subject matter jurisdiction and request for a permanent injunction restricting Rahl from making future filings. (Dkt. No. 25.) For the reasons that follow, the motion to dismiss is granted, the permanent injunction is denied, and Rahl is granted limited leave to amend his complaint.

**II. Background**

**A.  Factual History**

In June 1986, Rahl acquired certain real property when he purchased the Wallkill Valley Railroad Company. (*See* Compl. ¶¶ 8-9, Dkt. No. 1.) On February 7, 1992, Rahl granted Verizon a deed of easement pursuant to which Verizon was permitted to run and maintain wire and cable across Rahl's property at specific locations. (*See id.* at ¶

2

10; *see also* 1992 Agreement, Pl. Ex. 3 to Compl., Dkt. No. 1:4.)  In 1998, the parties entered into a subsequent agreement allowing Verizon to install a fiber optic cable across Rahl's property at an additional location. (*See* Compl. ¶ 12, Dkt. No. 1; *see also* 1998 Agreement, Pl. Ex. 4 to Compl., Dkt. No. 1:5.)  At some point thereafter, Verizon allegedly installed additional lines at one of the locations covered by the 1992 Agreement without Rahl's approval or the remuneration required.  (*See* Compl. ¶¶ 14-15, 18-21, Dkt. No. 1.)  Verizon, allegedly acting in concert with Ulster County, also installed a second fiber optic cable at a location covered by neither of the prior two agreements without permission or compensation. (*See id.* at ¶¶ 34-36.)  In 2007, despite Rahl's insistence that any payments due to Verizon for telephone and internet service were offset by Verizon's failure to compensate Rahl for the additional lines, Verizon terminated Rahl's internet and telephone service for nonpayment.  (*See id.* at ¶¶ 17-20.)

**B.     Procedural History**

On May 18, 2009, Rahl brought this action against Verizon in the United States District Court for the District of Vermont, requesting injunctive relief and damages.  (*See* Compl., Dkt. No. 1; Pet. for Prelim.

3

Inj., Dkt. No. 2.)  On June 18, 2009, Verizon moved to disqualify Rahl from appearing pro se, to dismiss the action for lack of subject matter jurisdiction, or alternatively for a transfer to the Northern District of New York.  (*See* Dkt. Nos. 5-7.)  Senior District Court Judge Garvan Murtha granted Verizon's motion to transfer venue without reaching the remaining issues.  (*See* Dkt. No. 15.)

On December 17, 2009, Magistrate Judge David R. Homer denied Verizon's motions to disqualify and dismiss.  (*See* Dkt. No. 24.)  On February 16, 2010, Verizon renewed its motion to dismiss for lack of subject matter jurisdiction and additionally requested a permanent injunction restricting Rahl's future filings.  (*See* Dkt. No. 25.)

### III. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings."  *Id.* at 113.  "When the question to be considered is one involving the jurisdiction of a federal court, jurisdiction

4

must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Thus, "a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. As relevant to the current motion, "courts must construe pro se pleadings broadly, and interpret them to raise the strongest arguments that they suggest," especially where civil rights violations are alleged. *See Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (italics omitted). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law" and courts cannot read into pro se submissions inconsistent claims or claims not suggested by those submissions. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations and internal quotation marks omitted).

## IV. Discussion

### A.   Subject Matter Jurisdiction

Rule 8 of the Federal Rules of Civil Procedure requires parties to plead "a short and plain statement of the grounds for the court's jurisdiction." FED R. CIV. P. 8(a)(1). Despite the liberal reading the court

5

must apply to the submissions of a pro se plaintiff, some set of facts must be included in the complaint that would support the court's exercise of subject matter jurisdiction and a complaint that falls too far short of this requirement may properly be dismissed.  *See, e.g., Altman v. Connally*, 456 F.2d 1114, 1116 (2d Cir. 1972) (per curiam).

In his attempt to lay jurisdictional grounds, Rahl cites Rule 65 of the Federal Rules of Civil Procedure.  (*See* Compl. ¶ 5, Dkt. No. 1.)  However, "it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978); *see also Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 (2d Cir. 2002).  The federal rules cannot be used as an independent basis for jurisdiction as they "merely prescribe the method by which [federal jurisdiction] is to be exercised."  *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004) (internal quotation marks and citations omitted).  Consequently, no matter what allegations are contained in the complaint, this court's jurisdiction over Rahl's claims cannot rest solely on Rule 65.

Rahl also cites 28 U.S.C. §§ 1331 and 1337(a) in an attempt to invoke jurisdiction.  (*See* Compl. ¶ 5, Dkt. No. 1.)  Sections 1331 and 1337 are general jurisdictional statutes that do not create a cause of action, but

6

"rather depend[] upon an action arising under a separate federal law before a district court's jurisdiction is proper." *325 Bleecker, Inc. v. Local Union No. 747*, 500 F. Supp. 2d 110, 119 (N.D.N.Y. 2007); *see also W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 192 (2d Cir. 1987). Section 1337 only operates where there is a "civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," 28 U.S.C. § 1337(a), and may not be invoked "on the bare assertion that a right under an act regulating commerce is infringed," *Russo v. Kirby*, 453 F.2d 548, 551 (2d Cir. 1971). Rather, "[f]acts must be alleged to show that federal law in the particular case creates a duty or a remedy." *Id.* (citations omitted).

A searching review of Rahl's submissions reveals no allegation of fact that suggests the applicability of any congressional regulation creating the right or remedy necessary to support a federal cause of action. The allegations of the complaint and its attached exhibits reveal only intrastate claims of trespass, breach of contract, fraud, and potentially an unlawful taking. Rahl's solitary reference to the Commerce Clause itself is plainly not enough to vest jurisdiction in this court under § 1337(a). (*See* Compl.

7

¶ 40, Dkt. No. 1.)

Rahl has also cited 28 U.S.C. § 1331, referenced the Fifth Amendment, and alleged that Verizon's actions were in conjunction with Ulster County. (*Id.* at ¶¶ 5, 35, 40.) Construing his complaint liberally, the court reads these to implicate an action arising under 42 U.S.C. § 1983, claiming that the continuing trespass by Verizon's installation of lines in excess of those permitted by the parties' contractual agreement is a taking without just compensation as required by the Fifth Amendment. As a jurisdictional matter, these claims taken together are sufficient to create subject matter jurisdiction. However, in light of the fact that Verizon intended to seek dismissal premised on a failure by Rahl to allege facts sufficient to state a claim that Verizon is a state actor, a prerequisite to their liability for a Fifth Amendment takings claim, the court construes that portion of Verizon's motion as a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (*See* Def. Mem. of Law at 19-20, Dkt. No. 25:1.)

**B.    State Action Doctrine**

"In order to state a claim under [42 U.S.C.] § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307,

8

323 (2d Cir. 2002) (citation omitted).  The alleged injurious action must work a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *see, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).  A private corporation may be held liable as a state actor "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks and citation omitted).  The "nexus may exist where a private actor has operated as a willful participant in joint activity with the State or its agents, or acts together with state officials or with significant state aid."  *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (internal quotation marks and citations omitted).  However, without more, a private entity is not a state actor merely where state law permits but does not compel the challenged behavior or where the defendant entity is subject to state regulation.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157 (1978) (finding no state action where warehouseman's threat to sell stored goods was authorized by state law); *Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974) (finding utility's disconnection of service not a state

9

action despite heavy public regulation).

A liberal reading of the complaint indicates that only Rahl's fourth cause of action potentially invokes the state action doctrine. Rahl's first cause of action involves a payment dispute culminating in cessation of Rahl's phone service by Verizon. (*See* Compl. at ¶¶ 17-22, Dkt. No. 1.) The second and third causes of action allege that Verizon is making use of a fiber optic cable beyond the scope of the Agreements.[1] (*See id.* at ¶¶ 24-27, 30-31.) The fifth cause of action requests that the court order the parties to enter into an agreement. (*See id.* at ¶¶ 39-42.) Nowhere in these claims is an allegation that a government or government agency was involved in the disputed conduct to any degree, let alone in a manner sufficient to create the required nexus between state and private action.

Still, Rahl's fourth cause of action seems to implicate the state action doctrine. Rahl alleges that a new line of fiber optic cable was placed without his permission and without compensation at a different location on his property than was subject to the prior agreements between the parties. (*See id.* at ¶¶ 34-36.) He alleges that this was "in conjunction with Ulster

---

[1] This claim would be spurious even if the court had jurisdiction. The Agreement itself, attached as an exhibit by Rahl, expressly permits use "for any and all purposes." (*See* 1998 Agreement, Pl. Ex. 4 to Compl., Dkt. No. 1:5.)

10

County['s]" construction of a new correctional facility.  (*See id.*)

It is well settled that "permanent occupations of land by ... telephone lines ... or wires are takings even if they occupy only relatively insubstantial amounts of space and do not seriously interfere with the landowner's use of the rest of his land."  *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 430 (1982) (citations omitted); *see also Southview Assocs., Ltd., v. Bongartz*, 980 F.2d 84, 93-94 (2d Cir. 1992) (discussing physical takings).  Bearing in mind that determinations as to state action are a "necessarily fact-bound inquiry," *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982), the court finds that Rahl has alleged facts sufficient to survive a Rule 12(b)(6) motion as to the state action component of his Fifth Amendment takings claim.

**C.    Ripeness**

"[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985); *see also Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995) (holding that the

state exhaustion requirement applies to physical and regulatory takings). In addition to the New York State Constitution, *see* N.Y. CONST. art. I, § 7, New York statutory law provides such a remedial procedure, *see* N.Y. EM. DOM. PROC. LAW § 101, *et seq.*, and "vests the Court of Claims with jurisdiction to determine claims arising from the acquisition of real property by the state of New York," *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 110 (2d Cir. 2009) (citing N.Y. EM. DOM. PROC. LAW § 501(A)). Accordingly, "a takings claim is not ripe if a remedy potentially is available under the state['s constitutional or statutory law]." *Id.* at 109 (internal quotation marks and citations omitted). And since "[r]ipeness is a jurisdictional inquiry, ... [the court] must consider it at the outset." *Id.* at 110 (internal quotation marks and citation omitted).

Here, Rahl does not request that Verizon be required to remove the offending cable, but seeks damages instead. In order for his takings claim to be ripe for adjudication in federal court, he must first have attempted to gain just compensation via one of the avenues provided under New York law. However, Rahl has neither alleged nor submitted any evidence that he availed himself of any state procedure. The lone assertion that he "has no other adequate remedy at law," (Compl. ¶ 2, Dkt. No. 1), is insufficient

12

to serve as a proxy for such a factual claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions ...." (internal quotation marks and citations omitted)).  Thus, because Rahl's complaint does not adequately allege that his takings claim is ripe for adjudication in federal court, the claim is dismissed.  *See Vaizburd v. United States*, 90 F. Supp. 2d 210, 217 (E.D.N.Y. 2000) (dismissing takings claim as unripe where pro se plaintiff failed to allege seeking and being denied adequate compensation from the state).

**D.     State Law Claims**

Rahl also claims violation of his rights under the New York State Constitution and New York Railroad Law.  (*See* Compl. ¶ 40, Dkt. No. 1.)  Whatever rights Rahl may be referring to, they clearly arise under state and not federal law.  The court declines to exercise supplemental jurisdiction over Rahl's state law claims.  Although a federal court has discretion to retain jurisdiction over state law claims after the dismissal of the federal claims that created original jurisdiction, "where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law

claims." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 263 (2d Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 1367(c)(3).

### E.     Amendment of the Complaint

While Rahl's complaint is fatally deficient for failure to allege sufficient facts to establish the ripeness of his Fifth Amendment claim, there is an outside chance that he has exhausted his state remedies and could plead sufficient facts in an amended pleading.  The court is mindful that a "pro se complaint is to be read liberally, and should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks, citation, and italics omitted).  Consequently, the court grants Rahl leave to amend his complaint to the extent he can demonstrate a justiciable takings claim.

### F.     Verizon's Request for Injunctive Relief

The court is aware of the history surrounding this litigation and is sympathetic to Verizon's desire to foreclose future litigation with Rahl. However, because the court has concluded that Rahl, as a pro se plaintiff, should be afforded the opportunity to amend his complaint, granting an

14

injunction to prevent him from making future filings would make little sense at this juncture. Accordingly, at this juncture, Verizon's request for a permanent injunction is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Verizon's motion to dismiss (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED** that Verizon's request for a permanent injunction (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED** that Rahl is granted leave to file an amended complaint, in full compliance with the terms of this Order, **within thirty (30) days** from the date of the filing of this Order, after which Verizon shall respond to the complaint as permitted under the Federal Rules of Civil Procedure; and it is further

**ORDERED** that if Rahl fails to file an amended complaint **within thirty (30) days** from the date of the filing of this Order, the Clerk of the Court shall enter judgment dismissing this action without further order of the court; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 23, 2010
Albany, New York

_____
United States District Court Judge